Good morning, Your Honors, and may it please the Court. My name is Justin Hooves, and I represent the Plaintiff Appellant, George Jacobs. We'd like to reserve a couple minutes for rebuttal. Mr. Jacobs, who is incarcerated, represented himself in the action below, where he faced a series of prejudicial errors before and during trial. The first issue I'd like to discuss is the District Court's denial of Mr. Jacobs' request to identify and call key witnesses that would have corroborated his vision of the events on July 24, 2007. The trial judge noted when he asked him for an explanation as to why he had not done that, he didn't really have an answer. How can we say that it's an abuse of discretion, which I think is the standard of review? Right. I think Mr. Jacobs' answer that he didn't really have an answer for why he requested this discovery reflects that he lacked skill to know what to do and when to do it. The District Court's denial of Mr. Jacobs' request was an abuse of discretion because it didn't apply leeway when assessing whether his failure to comply with the discovery order should be excused for good cause. Well, the problem that that put the trial judge in was that his request came after the close of discovery and shortly before trial. And as you know, it's difficult to writ — well, first of all, you have to find out if they're still in the same prison or if they've been moved to a different location, and then you've got to writ them out in custody to the courthouse. And the trial judge basically said there's not enough time to do that. Again, why is that an abuse of discretion? Well, when Mr. Jacobs initially made the trial request, the trial hadn't actually been scheduled yet. If the trial had still been scheduled for February, there was still enough time for the District Court to issue a subpoena, have the CDCR respond within a reasonable time, and have the witnesses called to trial to testify. That all sounds good in theory, but the District Court has an obligation to manage  effectively. And the rules are in place for the reason that, you know, unless there's really very significant constitutional or liberty sort of violation, the matter is to be discovered and ready for trial when the trial court says it should be, right? Yes. I think it's – in this case, though, it's unfair, or this Court's recognized that it can be unfair to hold pro se litigants to the same standards of professional responsibility that it would hold an attorney to. Well, but I don't know about if a pro se litigant wants to go to trial. He's got to follow the same rules everybody else does, right? Right. But then cases like McGuckin – in cases like McGuckin, the Court recognized that the District Court should still apply leeway when assessing whether or not a failure to comply with time limits can be excused for good cause. Here, I think the record suggests that Mr. Jacobs was as diligent as possible in responding to tasks as they came along. After discovery closed in the October before trial But that gets back to the question I asked you earlier, which was, in essence, the District established good cause, and unfortunately, your client's response was, I don't really have an answer for that. That's not establishing cause within the meaning of the rule, even if you're pro se. Right. But I think looking at that answer, I think what was clear was that he just didn't know what he was doing. Well, but – I mean, this is not a difficult legal issue that he's being asked to brief. The question is, if you think there were inmate eyewitnesses to the assault, why didn't you ask to find out where they were and get them here to trial to help your cause? And he didn't have an answer for that, other than, I didn't do it, and now it's – discovery is closed. Right. Well, I think if we look at the record, what happened was, in the October before trial, the District Court issued a second scheduling order. That order discussed for the first time evidence at trial and what Mr. Jacobs would need to proffer in order to call witnesses. Two weeks after he got that reminder, two weeks after he got that order, is when he filed his two requests. And I don't – it's not clear from the record that Mr. Jacobs necessarily understood that this was information that he needed to request during discovery or information that he couldn't request at that point. Okay. Why don't you move on, unless my colleagues have any more questions on that point, to your next point. Okay. So the next issue I'd like to discuss is the jury instruction on excessive force, which under the circumstances of this case, I don't think accurately stated the law because it didn't clarify that evidence of an injury is not required to establish excessive force. The clarification was particularly necessary under the circumstances of this case because Officer David's and Mazel's defense relied in part on emphasizing the lack of an injury. And the statements made by the defendants during closing were confusing and suggested to the jury that it needed to find evidence of an injury in order to find in Mr. Jacobs' favor. As I understood the record, the District Court utilized the Ninth Circuit form jury instruction. Is that right? That's right. One of the elements of which is that the jury is instructed that it may consider the extent of the injury suffered. That's right. And why doesn't that adequately address the argument here? Because in this case, during closing arguments, the defendants suggested that Officers David and Mazel didn't use excessive force. They didn't smash his hands in the food court door because there wasn't evidence of injury. In Hudson and Wilkins, the Supreme Court clarified that the nature of the force is the real central inquiry and an excessive force came, not the extent of the injury. But didn't the jury return damages against Sergeant, was it, Martinez for deliberate indifference to serious medical needs? And by virtue of that finding, can't we conclude that the jury must have concluded that he did, in fact, suffer injury requiring immediate medical attention? Yeah. And I understand the appeal of that argument, but as the District Court recognized It appeals to me. Right. If you can dissuade me from it, I'm all ears. Right. So the District Court, for example, recognized in its order denying Mr. Jacob's motion for a new trial that there's nothing about the jury verdict that indicated that the serious injury that Officer Martinez was deliberately indifferent to was necessarily related to Officer David and Mazel's actions. How can that be? I mean, this is one incident involving handcuffing. And as I understand the trial evidence, there were two correctional sergeants who responded, Martinez and another, and it was the other sergeant who directed that he be given immediate medical attention. And then the jury returned the verdict against Martinez. It all arises out of the same incident, does it not? Right. It does. I think the jury can look at this incident in two parts, though, the first part being the allegation that Officers David and Mazel slammed Mr. Jacob's hands in the food court door, and second, what happened was the cause of the injury. There's not more than one injury here, is there? Well, Mr. Jacob's testimony, yes, that that was the cause of the injury. David and Mazel said that Mr. Jacob didn't suffer any injury because they didn't slam his hands in the food court door. But the only facts that were before the jury that would establish the cause of the injury was the door, the food door on the cell door, correct? Not totally correct. That was Mr. Jacob's explanation for his injury. In the district court's order denying the motion for a new trial, it explained that the jury could have thought that Mr. Jacob suffered injury when he pushed forward into the cell while still handcuffed on his left hand and broke the handcuff key. I guess I'm not understanding what difference it makes. I mean, the fact is that he was injured as they were returning him to his cell, and I don't think it was contradicted that there was a broken handcuff key and one handcuff still dangling off of his wrist when the officers responded. But I think the difference is, is that in this case, in closing argument, the jury was told that there was no excessive force because there was no injury consistent with Mr. Jacob's having his hands slammed in the food court door. So when the jury was thinking about excessive injury, they were thinking of, he didn't have a broken finger, he didn't have, you know, swollen hands. So if the injury was not inflicted by the door slamming, I assume it's a piece of steel on his wrist, what would have been the cause of the injury to the wrist inside the cell? So the cause of the injury would be what happened after the slamming when he pushed forward into his cell, hit his hand on the side of the door himself, or caused himself injury, and caused the key to break at the same time. So there are two, so there are the- I understand the argument. I'm just trying to envision how it played out with the physical evidence. So I think if you look, so Mr. Jacob's hands were slammed in the food court door. Right. That caused him to push forward. When he pushed forward, he impacted his hands on the side of the door. He impacted, when he fell forward, you know, maybe he hit the ground. Oh, okay. I think I understand your argument better now. Isn't this Monday morning quarterbacking of a good lawyer? I mean, Mr. Jacobs never objected to the instruction packet. The instruction packet seemed to inform the jury, taken as a whole, of the applicable law. Judge Tallman just reflected on why the verdict would seem to indicate that error was harmless. I mean, it seems to me a quick affirmance on an instruction issue that was never made an issue until it came to us. Right. Well, so Mr. Jacobs tried to object to the jury instructions. I think in this case- I don't, I didn't see that in the record, that he said no comment at one point. I don't understand that, but go ahead. So he filed written objections. Those objections didn't state the basis for his objections, which may seem to cause difficulty on review. I think our position is that the Rule 51 requirements are nonetheless satisfied because Mr. Jacobs made the district court sufficiently aware of the need for clarification. And it's an argument that the district court also acknowledged in pretrial filings. So under those circumstances, I don't think that Rule 51 should be a barrier to de novo review. Okay. And even if this Court doesn't agree that de novo review should apply, I think on this record, before plain error review would apply, and on this record, before closing argument, whether or not this jury instruction- Is it plain error review or is it abuse of discretion? I believe it's abuse of discretion when it comes to the formulation of the jury instruction. Right. But our argument is that the jury instruction was incomplete because it didn't have this additional clarification, so an incomplete instruction would be reviewed for plain error. Okay. All right. I'm not trying to cut you off, but would you like to save the balance of your time for rebuttal? You're almost down to your two minutes. Sure. Okay. Thanks. Let's hear from the State. Good morning. May it please the Court. Diana Esquivel for the defendants David Martinez and Maciel. I just want to briefly address a couple of points that counsel made. I don't want to burden the Court too much with these issues. First, concerning Mr. Jacobs' request for a subpoena, the district court recognized that if it viewed the motion, the request, as one for a trial subpoena, the issuance of such subpoenas were futile because the information and the documents would not have been produced until the first day at trial. As the record amply shows, this case was tried in a day and a half, and therefore, issuing a trial subpoena would have been futile. Interpreting the motion Mr. Jacobs' request for a trial subpoena would have been futile because the information and the documents would not have been produced until the first day at trial. That doesn't seem as good an argument as your other, which is that he was just playing out of time. I mean, it seems to me what you're saying is that the futility would have been occasioned by the fact that the information came late, but if the information was relevant and significant and would have helped Mr. Jacobs' case, and if it was, as a legal matter, supportable to order it, whether it came on the first day or not, it should have been produced, right? Well, Your Honor, again, it's looking at the way the district court looked at it. The court was faced with this motion brought two months before trial. Right. And interpreting it first as a trial subpoena, the court explained to Mr. Jacobs during the pretrial conference why, as a trial subpoena, it was untimely because he would not receive the information. Right. Then explaining to Mr. Jacobs, interpreting your motion as one to reopen discovery,  to establish the good cause for modifying the scheduling order, Mr. Jacobs failed to do so. Right. At no time during that did he explain that it was his pro se status. So for that reason the issue. Right? Correct. It's untimely, it's late, it's out of time. Correct, Your Honor. Discretion is I'm not going to allow the exert services subpoena? Your Honor is absolutely correct. The one thing I did want to briefly address is plaintiff's counsel's assertion that this Court gives some freedom, some leeway to pro se litigants. And while that is correct, as this Court has time and again said it in its pleadings and motions, that leeway goes to procedures. This Court has never held, and plaintiff has cited no authority, that pro se litigants are entitled to a different burden or not required to show the burden for whatever motion they're bringing. And in this case, since Mr. Jacobs failed to establish good cause for reopening discovery, the district court did not abuse its discretion in properly denying the motion. Concerning the excessive force jury instruction, which is this circuit's model jury instruction number 9.24, the jury instruction correctly and completely states the law. On review, the courts, if it chooses to review the jury instruction, it's under the plain-error standard. After we filed our answering brief in Bonk, this Court issued CB, which are the initials, versus City of Sonora, where the Court again affirmed that it is the plain review, plain-error review standard if the Court chooses to exercise its discretion to review a challenge to a jury instruction where no contemporaneous objection was raised at the trial level. And based on the plain-error review, there was no error committed by the district judge, the district court judge. The language is taken almost verbatim from Hudson, the Supreme Court decision. And while in Wilkins, heavily relied on by plaintiff in his briefs, does state that the inquiry does not end if there is a lack of substantial or significant injury, the Supreme Court in Wilkins again affirms that the extent of the injury is a relevant factor in the excessive force inquiry as to what to show whether the force was necessary and the extent of the force used. Also, when all the jury instructions are read as a whole, there was no emphasis or undue emphasis given to the extent of the injury factor. Also, I would like to point out, if the Court goes back and reads the closing argument and reads it in context, there was never any undue emphasis by defense counsel during her closing argument that the lack of injury showed that there was no excessive force. Reading the closing argument as a whole, that argument went to the credibility or the believability of Mr. Jacobs' account of what had transpired at his whole at his cell. Lastly, I just want to briefly address the issue concerning the district court's refusal to allow Mr. Jacobs to recall Sergeant Martinez. I would just briefly point the Court to pages 164, line 1, to 165.24 of the reporter's transcript. These pages also appear in volume 1 of Plaintiff's record at pages 48 to 49, that the objection to the prior question and answer before the objection came, that was the only question and answer that was sustained and stricken by the district court. As the Court did use the singular, the response will be stricken. Sergeant Martinez did eventually clarify that the other two officers were aware of the prior lawsuit, and Mr. Jacobs, soon after the objection was sustained, again, conducted further inquiry as to what his response was now. So therefore, the district court's decision to not allow him to recall Sergeant Martinez, to impeach him with the prior request for admission response was unnecessary since he had already clarified and explained his inconsistent response given during cross-examination. And unless the Court has any further questions for me, the Court should affirm because there were no errors committed below. Thank you. Did you try the case? Yes, I did, Your Honor. Okay. All right. Thank you. Thank you very much, counsel. Mr. Hoog, you've got about two and a half minutes remaining. And before I forget, let me say again on the record how much we appreciate you and your firm taking this matter on pro bono. Our pleasure. I just want to briefly address the plain error standard of review quickly. I'm sorry. I didn't hear that. I want to briefly address the plain error, like whether or not this Court should or can reverse on plain error. I think on this record, before closing argument, whether or not there was plain error here is a closer question. But certainly, the error became plain during and after closing argument given the statements made by the defendants and countered by Mr. Jacobs in his rebuttal, which really brought this issue into focus for the district court. Certainly, Mr. Jacobs noticed the potential for confusion right away and made his statements in rebuttal. And this was an argument that the district court previously rejected when the defendants made it in their motion for summary judgment. I think because the confusion... Plain error means it's so obvious or apparent that simply reading the record, an appellate judge would conclude it was error not to give a portion of the instruction that the claim should have been given, right? Then you look at whether or not the error was harmless. I think the state of California is now saying that, as a whole, there's some real question about whether or not the judge had any duty to give that portion of the instruction. And so, if I'm understanding this correctly, we go back to a matter of whether it was an abuse of discretion by the district judge. Maybe I'm wrong about that, but... Well, I don't think it goes into abuse of discretion because we're not arguing about the formulation. We're saying that on the facts of this case and under these circumstances, the model instruction was incomplete without clarifying that no evidence of injury was required in order to find excessive force. All right. Well, what if we just say it's not plain error? Are you then flat out out of luck at that point? I mean, it's questionable. You know, okay, we respect your point of view, but, you know, district judge had a point of view, too. It's at least arguable. It's certainly not plain that he should have given that portion of the instruction. Where do we go from there? I mean, I think that you should the conclusion is that it was plain after closing arguments, and especially, you know, it was immediately clear to Mr. Jacobs that this was a source of confusion, a potential source of confusion for the jury, and it really did affect his rights because if the jury believed that evidence of an injury was required, they would have effectively added an element to his claim for excessive force. Counsel, you are out of time. Thank you very much. Thank you. The case just argued is submitted, and we are adjourned for the day.
judges: Murphy, Tallman, Rawlinson